

FILED
2021 Feb-12 PM 12:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| LAVENTRA DENICE RUTLEDGE, AS ADMINISTRATRIX OF THE ESTATE OF THOMAS LEE RUTLEDGE, | ) ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NUMBER: |
| v. | ) ) | |
| CHRISTIE SANSING AND CORY ELLER, LIEUTENANT TIM POPE, WARDEN PHYLLIS MORGAN, AND WARDEN KENNETH PETERS | ) ) ) ) ) ) ) | |
| Defendants | | |

## Complaint

### I.   Introduction

1. This action arises from appalling circumstances: Thomas Lee Rutledge, a man in the custody of the Alabama Department of Corrections at William E. Donaldson Correctional facility in Bessemer, Alabama, was literally baked to death in his cell by excessive heat generated by the prison's heating system on December 7, 2020. His death was the direct result of the deliberate indifference or malice of the prison official and corrections officers at Donaldson. LaVentra Denice Rutledge, in her capacity as the administratrix of Mr. Rutledge's estate, brings this action for

1

damages to remedy the egregious Eighth Amendment violations that resulted in her brother's wrongful death.

## II.  Parties

2.  The Plaintiff, LaVentra Denice Rutledge, is the Administratrix of the Estate of her brother Thomas Lee Rutledge.

3.  The Decedent, Thomas Lee Rutledge, was a beloved son and brother. He was also a human being in the custody of the Alabama State Department of Corrections at the time of his death on December 7, 2020, when he was killed through the deliberate indifference or malice of Defendants.

4.  Defendants Corrections Officers Christie Sansing and Cory Eller, Lieutenant Tim Pope, Warden Phyllis Morgan, and Warden Kenneth Peters are employees and/or officers of the Alabama Department of Corrections. Each was deliberately indifferent to the serious risk of harm from life-threatening heat in T unit. Alternately, each acted with malice for the individuals housed there. Each is sued in his or her individual capacity.

## III.  Jurisdiction and Venue

5.  The plaintiff brings this complaint pursuant to 42 USC §1983 for the defendants' violation of Mr. Rutledge's right to be free from cruel and unusual punishment under the Eighth Amendment of the United States Constitution. Pursuant to 28 USC §1331, the Court has subject matter jurisdiction, as the claims

in this case arise under federal law. The court also has personal jurisdiction over all defendants. Venue is proper in the Northern District of Alabama, Southern division, as the William E. Donaldson Correctional facility is located within this district.

### IV.     Factual Allegations

6.      Thomas Rutledge was sentenced to life without parole in 1995 for offenses he committed as a juvenile. At the time of his death on December 7, 2020, Mr. Rutledge was forty-four years old and had spent more than half of his life in prison.

7.      Although originally sentenced to life without parole, Mr. Rutledge had his sentence reduced following a United States Supreme Court decision holding that mandatory sentences of life without the possibility for parole for juvenile offenders are unconstitutional. Had Mr. Rutledge lived, he would have become eligible for parole and possible release in 2024. Mr. Rutledge had matured and grown during his years in prison and become a different person from the troubled young man who committed the crimes for which he was incarcerated. He had dreams of obtaining his freedom, joining his mother in Alaska, and starting a new and productive life.

8.      Heartbreakingly, those dreams were cut short by Mr. Rutledge's death on December 7, 2020, when he was literally baked to death in his locked cell at William E. Donaldson Correctional Facility, a place where he had been known for his smile and his positive outlook under the most trying of circumstances.

9. Mr. Rutledge was housed in a single cell in the "T unit" housing dorm, according to the Jefferson County Coroner's report, which is attached to this Complaint as Exhibit A. The report further states that Mr. Rutledge was last seen in his cell alive at 1800 hours on December 7, 2020 by an inmate known as a "runner" for the prison.

10. The report further states that "on the mental health ward the decedent/other inmates never leave their cells, they eat/bathe in their cells."

11. The weather on December 7 was mild, with outdoor high temperatures in the mid-forties Fahrenheit and a low of around thirty degrees.

12. The Jefferson County Coroner's report states that Mr. Rutledge "was in a cell with a temperature reported to be 101-104° F. He was found unresponsive, and his body temperature was recorded at 109° F when persons were trying to resuscitate him." (Exhibit A).

13. These temperature readings were taken a considerable amount of time after the door to the cell had been opened and medical staff had tried unsuccessfully to resuscitate Mr. Rutledge. The temperature of the cell prior to the door being opened was far in excess of the above temperature readings.

14. The autopsy report states that Mr. Rutledge was found "in his cell sitting near the window of his cell with his head/face out the window believed attempting to breath/obtain cool/cold air." (Exhibit A).

15. Mr. Rutledge's cell contained a heating vent but no means of regulating the heat output to the cell, nor did Mr. Rutledge have any effective means of regulating the temperature in his cell.

16. The autopsy showed no visible disease or injury that would account for Mr. Rutledge's death. Hyperthermia leaves no visible trace after death. Toxicological analysis detected neither ethanol nor any illicit drug in his body.

17. The Coroner determined, based on the circumstances surrounding the death and the findings at autopsy, that Mr. Rutledge died of hyperthermia. (Exhibit A). The only cause of death identified by the Coroner was hyperthermia. (Exhibit A). However, even if there were another cause of death, the excessive heat in Mr. Rutledge's cell would remain a determinative factor.

18. The Coroner's report states that "[t]he manner of death is best classified as 'accident' for public health certification." (Exhibit A).

19. However, Mr. Rutledge's death was no accident. Rather, it was the result of the deliberate indifference of the named Defendants and other individuals whose identity is unknown at this time. These individuals were deliberately indifferent to a substantial risk of serious harm caused by the excessive heat in T unit. They failed to take action to protect Mr. Rutledge and others from serious injury or death, despite an obvious substantial risk to human life. Their actions and inactions were malicious.

20.	December 7, 2020 was not the first time that incarcerated persons in T unit were subjected to life threatening excessive heat. Prison officials, including the defendants, had long been aware of problems with the boiler that posed a substantial risk of serious harm to incarcerated persons as a result of excessive heat produced by the boiler heating system.

21.	Mr. Rutledge was not the first to die under similar circumstances. Upon information and belief, an incarcerated person had previously passed away under circumstances resulting from a boiler malfunction in the same building where Mr. Rutledge was killed. Accordingly, Defendants were aware of the substantial risk of serious harm, including death, to incarcerated persons as a result of excessive heat in T unit.

## V.   Cause of Action: Wrongful Death – Eighth Amendment to the United States Constitution via 42 USC §1983 – All Defendants Are Sued in their Individual Capacities.

20.	Mr. Rutledge was confined for an excessive, life-threatening period of time to a cell with a temperature well in excess of one hundred degrees Fahrenheit and inadequate ventilation, amounting to cruel and unusual punishment in violation of the Eighth Amendment. The conditions of confinement in Mr. Rutledge's cell constituted an extreme deprivation of Mr. Rutledge's clearly established Eighth Amendment rights.

21. Officials responsible for the safety and wellbeing of individuals housed in T unit, including each of the named defendants, were aware of the excessive heat in the facility. They were further aware that this excessive heat represented a substantial risk of serious harm for the inmates who were housed there. However, out of deliberate indifference or malice, they failed to take reasonable measures to guarantee the safety of the inmates confined to T unit.

22. Mr. Rutledge's death of hyperthermia was the direct and proximate result of these defendants' deliberate indifference or malice to conditions of confinement amounting to cruel and unusual punishment.

## VI. Request for Relief

Plaintiff seeks the following relief:

23. Award judgment in her favor against Defendants jointly and severally in an amount to be determined by the jury for compensatory damages;

24. Award punitive damages against Defendants sufficient to punish them and to deter further wrongdoing;

25. Award Plaintiff reasonable attorney's fees and costs pursuant to 42 USC §1988;

26. Award Plaintiff all litigation expenses, costs, and pre-judgment and post-judgment interest at the maximum daily interest rate allowable by law; and

27. Such other relief as the Court deems just and proper.

## VII. Jury Demand

28. The Plaintiff demands a trial by struck jury on all issues so triable.

Respectfully submitted,

*/s/ Jon C. Goldfarb*
Jon C. Goldfarb asb-5401-f58j
L. William Smith asb 8660-a61s
Christina M. Malmat asb-1214-y44q
Lieselotte Carmen-Burks asb-8304-t46e
Counsel for Plaintiff

**OF COUNSEL:**
Wiggins, Childs, Pantazis, Fisher,
& Goldfarb, LLC
301 19th Street North
Birmingham, AL 35203
Telephone No.: (205) 314-0500
Facsimile No.: (205) 254-1500